**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**Civil Action No. 1:21-cv-124**

| | |
|---|---|
| **LEGACY 73 SIGNS, LLC, on the authority of its member-managers, David M. Smith and Jamie M. Smith,** | |
| **Plaintiff,** | |
| **v.** | **VERIFIED COMPLAINT** |
| **GERALD LIPSCOMB, individually and d/b/a Shytle Sign and Lighting Services, LLC,** | **(Jury Trial Demanded)** |
| **GARY DEAN SHYTLE, individually and as member, co-owner and operator of Shytle Sign and Lighting Services, LLC,** | |
| **and** | |
| **SHYTLE SIGN AND LIGHTING SERVICES, LLC,** | |
| **Defendants.** | |

Plaintiff, Legacy 73 Signs, LLC hereby allege and complains of the Defendants as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this action against Gerald Lipscomb ("Defendant Lipscomb") because he violated the terms of a non-compete agreement in relation to the sale of Lipscomb Signs, Inc's assets and the attendant goodwill. After the sale, Defendant Lipscomb interfered with Plaintiff's business, solicited Plaintiff's employees, interfered with Plaintiff's customer contracts and effectively destroyed and/or usurped the goodwill sold to Plaintiff.

-1-

2.     Furthermore, Defendant Lipscomb actively assisted Gary Dean Shytle ("Defendant Shytle"), a key employee of Plaintiff, and encouraged Defendant Shytle to leave Plaintiff and set up a competing sign business in a warehouse Defendant Lipscomb owned, immediately next door to Plaintiff.  The resulting entity is Shytle Sign and Lighting Services, LLC ("Defendant Shytle Sign"), formed March 6, 2019, prior to the expiration of Defendant Lipscomb's non-compete. With the assistance of Defendant Lipscomb, Defendant Shytle Sign directly competes with Plaintiff's business.

3.     Plaintiff alleges and complains herein that their damages incurred, due to the Defendants' conduct, is in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## THE PARTIES

4.     **Plaintiff Legacy 73 Signs, LLC** is a limited liability corporation organized and existing under the laws of the State of North Carolina.

5.     David M. Smith ("Mr. Smith") and Jamie M. Smith ("Mrs. Smith") (hereinafter collectively "The Smiths") are a married couple that work together in the sign industry.

6.     David M. Smith is a citizen and resident of the State of South Carolina.

7.     Jamie M. Smith is a citizen and resident of the State of South Carolina.

8.     The Smiths are the only members of Plaintiff Legacy 73 Signs, LLC.

9.     Therefore, Plaintiff Legacy 73 Signs, LLC is a citizen of South Carolina.

10.     **Defendant Gerald Lipscomb** is a citizen of the United States and a resident of the State of North Carolina.

11.     Upon information and belief, Defendant Lipscomb lives in Forest City, Rutherford County, North Carolina.

12.     Defendant Lipscomb was the sole shareholder of Lipscomb Signs, Inc. and sold the

assets of his business and its attendant goodwill to Plaintiff.

13. Defendant Lipscomb is being sued in his individual capacity and to the extent he is doing business as or on behalf of Defendant Shytle Sign.

14. **Defendant Gary Dean Shytle** is a citizen of the United States and a resident of the State of North Carolina.

15. Upon information and belief, Defendant Shytle lives in Ellenboro, Rutherford County, North Carolina.

16. Defendant Shytle is a member, co-owner and operator of Defendant Shytle Sign.

17. Defendant Shytle is a former employee of Lipscomb Signs, Inc. and remained an employee of Plaintiff until leaving to form a competing business venture.

18. **Defendant Shytle Sign and Lighting Services, LLC** is a corporation organized and existing under the laws of the State of North Carolina. Defendant Shytle Sign is a North Carolina limited liability company that may be served with process in this action by service upon its registered agent, Gary Dean Shytle, at its registered agent office located at 567 Terry Road, Ellenboro, NC 28040.

19. Defendant Shytle Sign was formed with the North Carolina Secretary of State on March 6, 2019.

20. Upon information and belief, all members of Defendant Shytle Sign are citizens and residents of North Carolina, thereby making Defendant Shytle Sign a citizen of North Carolina.

## JURISDICTION AND VENUE

21. This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

22.     Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. 1391 as: (a) Defendants reside in this judicial district; and (b) a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### I.     Defendant Lipscomb's Sale of Lipscomb Signs, Inc. to Plaintiff.

23.     Defendant Lipscomb and Plaintiff entered into a contract on June 30, 2017 for the Purchase and Sale of Assets of Lipscomb Signs, Inc. See attached, including all schedules and exhibits, as Ex. A, Bates Stamped 0001-0150), which is expressly incorporated by reference as if fully restated herein. ("Purchase Agreement")

24.     At the time the parties entered into the Purchase Agreement, Defendant Lipscomb was the sole shareholder of Lipscomb Signs, Inc.

25.     The Smiths are the sole members of Legacy 73 Signs, LLC, and at the time the parties entered into the Purchase Agreement, were the guarantors and beneficiaries of the contract between the parties.

26.     The Purchase Agreement involved the sale of Lipscomb Signs, Inc.'s assets, a business engaged in the design, sale, installation, maintenance and removal of signs and related products and services (hereinafter the "Operations").

27.     Lipscomb Signs operates out of 334 Sparks Drive, Forest City, NC 28043 (hereinafter the "Facility").

28.     By way of the Purchase Agreement, Plaintiff purchased from Defendant Lipscomb the assets used in the Operation and agreed to lease a portion of the Facility from Defendant Lipscomb, with the option to purchase such real property in the future.

29.     Plaintiff purchased all of Defendant Lipscomb's fixed assets, including but not

-4-

limited to Defendant Lipscomb's signs advertising, Defendant Lipscomb's business, furniture, trade fixtures, equipment, machinery, tools and all other fixed assets not considered real property.

30.     Plaintiff also purchased the goodwill, inventory, customer records, materials supplies, transferable licenses, business name(s), telephone number(s), contract rights, software and software licenses, trade secrets, patents, intellectual property, web sites and domain names, and email addresses associated with Lipscomb Signs, Inc.

31.     In addition, Plaintiff purchased a Non-Competition/Goodwill Purchase Agreement ("Non-Competition/Goodwill Agreement"). See Ex. A, Bates Stamped 0057-0062.

32.     The total purchase price in the Purchase Agreement was $1,665,000.00.

33.     The Purchase Agreement stipulates to the allocation of purchase price as follows:

    a.  Inventory - $215,000.00

    b.  Furniture, Fixtures and Equipment - $450,000.00

    c.  Goodwill - $940,000.00

    d.  Non-Compete - $60,000 ($20,000 per year for 3 years) (See Ex. A, Schedule 2.3, Bates Stamped 0125)

34.     The Non-Competition/Goodwill Agreement provides that Defendant Lipscomb would be restricted from competition with Plaintiff for a period of thirty-six (36) months, *extended on a day-for-day basis* for the length of any period during which Defendant Lipscomb is in breach of any of the terms set forth in § 2.1 of the Non-Competition/Goodwill Agreement.

35.     The Non-Competition/Goodwill Agreement provides that the restricted area contemplated is any location that is within one hundred twenty-five (125 miles) from 334 Sparks Drive, Forest City, NC 28043.

36.     The Non-Competition/Goodwill Agreement includes a provision that during the

-5-

Restricted Time period Defendant Lipscomb would not directly or indirectly solicit or attempt to solicit (i) any employee of Plaintiff to leave the employment of Plaintiff, or (ii) any agent, independent contractor, broker, vendor, or supplier to terminate its relationship with Plaintiff.

37. Of note, during the negotiation of the Purchase Agreement, Defendant Lipscomb identified Defendant Shytle as an "essential" or "key" employee of the business.

38. Defendant Shytle worked with Defendant Lipscomb for 20 years prior to the sale of the business and upon information and belief, Defendant Lipscomb treated Defendant Shytle as if he was a member of his own family.

39. Upon information and belief, Defendant Lipscomb has openly voiced his care, concern, and desire to help Defendant Shytle and mentioned that people refer to Defendant Shytle as "Dean Lipscomb".

## II. Defendant Lipscomb's Breach of the Covenant Not to Compete, Collusion with Defendant Shytle, and Destruction of Attendant Goodwill.

40. The Purchase Agreement included a provision that Defendant Lipscomb would provide among other things "Management Assistance" for a period of four (4) weeks or twenty (20) business days for eight hours a day following Closing, and included a Consulting Agreement, whereby Defendant Lipscomb agreed to provide consulting services to Plaintiff in the operation of the business. See attached Ex. A, Bates Stamped 0005.

41. Defendant Lipscomb abused his position during his consulting period on several occasions and ultimately Plaintiff had to change the locks on the premises to prevent Defendant Lipscomb from interfering with the business operations. The locks were changed on or about February 21, 2018.

42. Defendant Lipscomb directed Shari St. Clair, an employee of Plaintiff, to continue to do bookkeeping and additional office work for Defendant Lipscomb, work that exceeded 60

hours of time. This work was performed by St. Clair during business hours while she was employed by Plaintiff.

43. Defendant Lipscomb directed another employee, Paula Kunka, to continue to manage "book order" pickups for him. Defendant Lipscomb stores books that are sold on Amazon at his warehouse at 489 Withrow Road, Forest City, NC 28043. Defendant Lipscomb used additional Lipscomb Signs employees and equipment to retrieve, package, and load the books on freight trucks. The "book order" pickups ceased when Plaintiff began sending invoices to Defendant Lipscomb for the use of Plaintiff's labor and equipment on or about August 17, 2017.

44. Upon information and belief, on at least two occasions, Defendant Lipscomb told Dennis Truluck, that "He's getting the business back in January (2018)".

45. On or about September 14, 2017, Defendant Lipscomb requested his former employee and at the time a current employee of Plaintiff, to design and print a banner for his granddaughter. The job was not entered in Plaintiff's point-of-sale software, and Defendant Lipscomb never paid for the banner.

46. On or about October 3, 2017, Defendant Lipscomb's son, Patrick Lipscomb, was terminated from Plaintiff, for abandoning his duties.

47. While Defendant Shytle was still employed by Plaintiff, on or about February 2, 2019, a Facebook page was created for "Shytle Sign and Lighting Services".

48. The Facebook page specifically referenced Defendant Shytle's career at Lipscomb Signs. Upon information and belief, Defendant Shytle utilized the goodwill and name recognition of Lipscomb Signs to promote Defendant Shytle's business.

49. On or about March 6, 2019 Defendant Shytle Sign was formed with the North Carolina Secretary of State.

50.     At this time, Defendant Shytle was still an employee of Plaintiff.

51.     Upon information and belief, Defendant Shytle Sign was formed one-year, three months, and 24 days prior to the expiration of Defendant Lipscomb's non-compete with financial and material assistance from Defendant Lipscomb.

52.     On or about March 6, 2019, Defendant Shytle Sign's company logos were saved on the computer of Plaintiff's employee, Ryan Calhoun.  Calhoun had previously worked for Defendant Lipscomb.

53.     On or about March 11, 2019, while Defendant Shytle was still an employee of Plaintiff, Defendant Shytle Sign's logos were discovered on Ryan Calhoun's company computer.

54.     On or about March 9, 2019, an email exchange occurred between Defendant Lipscomb and his daughter-in-law, Anna Lipscomb, indicating that Defendant Lipscomb has been helping Defendant Shytle establish business and truck insurance.  At this time Defendant Lipscomb was continuing to use his Lipscomb Signs email account, that was included in the assets purchased with the business.  At this time Defendant Lipscomb remained under the terms of his non-compete with Plaintiff.

55.     On or about March 15, 2019, Defendant Shytle gave his two weeks' verbal notice of resignation to Mr. Smith.

56.     On or about March 18, 2019, an employee of Plaintiff alerted the Smiths that Defendant Lipscomb was on the property, unannounced, and was talking to Plaintiff's employees, Defendant Shytle and Ryan Calhoun.

57.     On or about March 11, 2019, Mr. Smith had a conversation with the business broker for the sale of Lipscomb Signs, Inc., regarding Defendant Lipscomb's interference with the business.  Upon information and belief, the business broker had a conversation with Defendant

-8-

Lipscomb reminding Defendant Lipscomb about the non-compete provision of the Purchase Agreement. Upon information and belief, Defendant Lipscomb stated he was aware of the non-compete provisions but explained Defendant Shytle worked for him for a lot of years, and he could not turn his back on Defendant Shytle. Upon information and belief, Defendant Lipscomb stated that he assisted Defendant Shytle by providing specs on how deep to drill a footing, how to price jobs, etc. At the time, Defendant Lipscomb remained under the terms and provisions of the Non-Compete.

58.     On or about March 12, 2019, Defendant Shytle Sign and Lighting Services acquired its first of three trucks, a 2004 International Series 4300, Model 4000, VIN Number 1HTMMAP24H664351. The vehicle was titled to Defendant Shytle Sign and Lighting Services. The lien holder on the truck is Defendant Lipscomb.

59.     The prior owner of the vehicle was Eckstein Signs, owned by Jim Eckstein, a previous customer and business associate of Lipscomb Signs, Inc. and a customer of Plaintiff up until June 18, 2019.

60.     On or about March 18, 2019, Defendant Lipscomb began to engage in frequent interaction and "likes" with the Facebook page of Defendant Shytle Sign, promoting the business. Upon information and belief, Defendant Lipscomb continued this interaction, liking approximately fifty percent (50%) of the posts from March 18, 2019 through July 3, 2020.

61.     On or about March 26, 2019, Ryan Calhoun, another "key" employee of Lipscomb Signs, Inc. turned in his voluntary resignation with a twelve-week notice, stating his intention to move to Oregon.

62.     On or about March 27, 2019, Dennis Truluck, a former employee of Defendant Lipscomb and then an employee of Plaintiff, terminated his employment with Plaintiff without

notice. Upon information and belief, Truluck now works for Defendant Shytle.

63. On or about March 29, 2019, Defendant Shytle worked his last day as an employee of Plaintiff.

64. On or about April 1, 2019, Defendant Lipscomb directed employees of Plaintiff, without permission from Plaintiff, to remove a digital display from 334 Sparks Drive, the property owned by Defendant Lipscomb and leased by Plaintiff and move it to Defendant Lipscomb's warehouse next door at 489 Withrow Road, Forest City, NC 28043. This would ultimately become the address of Shytle Sign and Lighting Services, LLC. The display's estimated value was approximately THIRTY THOUSAND FIVE HUNDRED AND TWENTY-ONE and NO/100 dollars ($30,521.00). The display in question was listed in Schedule 1.1 FFE of the Purchase Agreement, referring to "all non-personal items in shop and fabrication departments."

65. On or about June 1, 2020, Defendant Lipscomb contacted Don Martin, an employee of Plaintiff, to get a 20-foot 1/8-inch-thick steel angle from the Smith's property. Defendant Lipscomb picked up the steel angle the same day without permission or payment. Upon prompting, payment was made on July 16, 2020.

66. On or about June 2, 2020, Defendant Shytle Sign acquired two additional trucks. 1) a 2007 Ford Super Duty F750, VIN 3FRPX75B57V508109. The title is to Shytle Sign & Lighting Services, LLC. The lien holder on the vehicle is Defendant Lipscomb. 2) A 2007 Ford Super Duty F750, VIN 3FRXF75F87V49467. The title is to Shytle Sign and Lighting Services, LLC and the lien holder is again Defendant Lipscomb.

67. The previous lessors of both 2007 Ford Super Duty F750 vehicles was SignArt (Lockwood Identity, Inc.) SignArt was a previous customer of Plaintiff, and Legacy 73 Signs had completed an order most recently as of November 21, 2019.

68.     On or about August 14, 2020, Defendant Shytle Sign announced a new location at Defendant Lipscomb's property at 489 Withrow Road, Forest City, NC, a property that borders the property of Plaintiff's business at 334 Sparks Drive, Forest City, NC.

69.     On or about August 14, 2020 Defendant Shytle Sign announces expanded capabilities, including commercial signage, digital displays, aluminum signs, banners, signage repair, vinyl and sign installation, lighting repair and installation, trade show displays, store displays, and vinyl graphics, all of which directly compete with Plaintiff and their company, Legacy 73 Signs, LLC.

70.     On or about December 14, 2020, a RFQ for sign service from Hilton Displays, acting on behalf of BB&T, was sent to geraldlipscomb@bellsouth.net.  Defendant Lipscomb forwarded that email to Defendant Shytle.  He did not forward the email to Plaintiff or the Smiths. At that time Defendant Lipscomb remained under the terms of the Non-Compete Agreement, including Section 2.1 (b) which states Defendant Lipscomb would not "solicit or attempt to solicit retail, wholesale, or any other sign business from any Customer(s) or 'Prospective Customer(s)'…except on behalf of the Buyer pursuant to the terms of this Agreement or any consulting agreement entered into by the parties…"

71.     Upon information and belief, on or about February 15, 2021, Defendant Lipscomb used the name Lipscomb Signs to solicit business with Atlantic Packaging for Defendant Shytle Sign while he remained under the terms of the Non-Compete Agreement Section 2.1(b) outlined above.

72.     On or about February 15, 2020, an email was sent to geraldlipscomb@bellsouth.net from Atlantic Packaging, a previous and at the time current Lipscomb Signs customer.  Mr. Smith received the email from the forwarding protocol put into place immediately following the purchase

of the business. Mr. Smith replied to the customer the same day. Defendant Lipscomb replied as well, forwarding contact information and a glowing reference for Defendant Shytle. At the time, Defendant Lipscomb remained under the terms of Section 2.1(b) of the Non-Competition Agreement he entered into with Plaintiff on June 30, 2017.

### III. Defendant Lipscomb and Defendant Shytle's Interference with Contracts and Economic Advantage.

73. Upon information and belief, Defendant Lipscomb and Defendant Shytle have diverted longstanding business relationships away from Plaintiff and have attempted to convert those clients to those of Defendant Shytle.

74. Lipscomb Signs, Inc., and Plaintiff after the Purchase Agreement had a number of consistent and existing business relationships.

75. At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Lockwood Identity, d/b/a SignArt from 2014 to 2017, totaling approximately $173,446.44 in revenue. Thereafter, SignArt continued to use Plaintiff for jobs in 2017, 2018, and 2019, totaling approximately $86,655.00 in revenue over that time.

76. SignArt is owned by Randy Souther, a long-time business associate and friend of Defendant Lipscomb.

77. Randy Souther sold two (2) of the three (3) trucks to Defendant Shytle Sign on June 2, 2020. Defendant Lipscomb is the lienholder on both of those trucks.

78. The last job order Plaintiff received for completion from SignArt was on August 7, 2019.

79. Upon information and belief, SignArt has moved its business to Defendant Shytle.

80. At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Sign Connection, Inc. from 2001 to 2017, totaling

-12-

approximately $192,297.27 in revenue. Thereafter, Sign Connection, Inc. continued to use Plaintiff for jobs in 2017, 2018, and 2019, totaling approximately $29,142.00 in revenue over that time.

81.     Sign Connection is owned by Chip Craig, a long-time business associate and friend of Defendant Lipscomb.

82.     The last job order Plaintiff received for completion from Sign Connection was on September 27, 2018.

83.     Upon information and belief, Sign Connection now uses Defendant Shytle Sign for its sign needs.

84.     At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Eckstein Signs from 2001 to 2017, totaling approximately $75,592.93 in revenue. Thereafter, Eckstein Signs continued to use Plaintiff for jobs in 2017, 2018, and 2019, totaling approximately $9,610.63 in revenue over that time.

85.     The last job order Plaintiff received for completion from Eckstein Signs was on June 18, 2019.

86.     Upon information and belief, Eckstein Signs now uses Defendant Shytle Sign for its sign needs.

87.     At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Skyvision Signs from 2003 to 2017, totaling approximately $124,708.03 in revenue. Thereafter, Skyvision Signs continued to use Plaintiff for jobs in 2017, 2018, and 2019, totaling approximately $11,830.00 in revenue over that time.

88.     Skyvision Signs is owned by Sherman Swofford, a long-time friend of Defendant Lipscomb.

89.     The last job order Plaintiff received for completion from Skyvision Signs was on January 15, 2019.

90.     Upon information and belief, Skyvision Signs now uses Defendant Shytle Sign for its sign needs.

91.     At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Rutherford Management Group, Inc. from 2003 to 2017, totaling approximately $92,068.77 in revenue.  Thereafter, Rutherford Management Group, Inc. continued to use Plaintiff for jobs in 2017 and 2018, totaling approximately $6,933.65 in revenue over that time.

92.     The last order Plaintiff received for completion from Rutherford Management Group on was May 4, 2018.

93.     Upon information and belief, Rutherford Management Group now uses Defendant Shytle Sign for its sign needs.

94.     At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Hardin's Drug from 2002 to 2017, totaling approximately $154,180.99 in revenue.  Thereafter, Hardin's Drug continued to use Plaintiff for jobs in 2017, 2018, 2019 and 2020, totaling approximately $5,357.40 in revenue over that time.

95.     The last order Plaintiff received for completion from Hardin's Drug on was July 6, 2020.

96.     Upon information and belief, Hardin's Drug now uses Defendant Shytle Sign for its sign needs.

97.     At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Mossburg Sign Products from 2002 to 2017, totaling

approximately $54,315.67 in revenue. Thereafter, Mossburg Sign Products continued to use Plaintiff for jobs in 2017 and 2018, totaling approximately $29,970.00 in revenue over that time.

98.     The last order Plaintiff received for completion from Mossburg Sign Products was on August 23, 2018.

99.     Upon information and belief, Mossburg Sign Products now uses Defendant Shytle Sign for its sign needs.

100.    At the time Plaintiff purchased Lipscomb Signs, Inc. and the attendant goodwill, Lipscomb Signs, Inc. had done business with Desena Commercial Services in 2012 and 2017, totaling approximately $5,282.74 in revenue. Thereafter, Desena Commercial Services continued to use Plaintiff for jobs in 2017 and 2019, totaling approximately $8,888.50 in revenue over that period.

101.    The last order Plaintiff received for completion from Desena Commercial Services was on March 26, 2019.

102.    Upon information and belief, Desena Commercial Services now uses Defendant Shytle Sign for its sign needs.

103.    Upon information and belief, Defendant Lipscomb and Defendant Shytle, aware of these longstanding business relationships sought to influence each of these companies to cease doing business with Plaintiff and transfer their business to Defendant Shytle and his competing enterprise.

104.    Defendant Lipscomb was aware that he sold his business and the attendant goodwill to Plaintiff for the benefit of Plaintiff as the sole members of the LLC.

105.    Defendant Lipscomb was aware that he was under a non-compete as part of the Purchase Agreement he signed with Plaintiff.

106.    Defendant Lipscomb was aware that Plaintiff had a reasonable expectation of economic benefit based on these longstanding business relationships in the community.

107.    Upon information and belief, Defendant Lipscomb wrongfully interfered with that expectancy.

108.    Upon information and belief, there was a reasonable probability that Plaintiff would have received the anticipated economic benefit in the absence of Defendant Lipscomb's interference, and Plaintiff have been damaged as a result.

109.    Upon information and belief, Defendant Shytle was aware of the sale of Lipscomb Signs Inc. from Defendant Lipscomb to Plaintiff and the attendant goodwill.

110.    Upon information and belief, Defendant Shytle as an employee of both Defendant Lipscomb and Plaintiff was aware of the longstanding business relationships that existed between Lipscomb Signs, Inc., and later Plaintiff and the aforementioned companies.

111.    Upon information and belief, Defendant Shytle had knowledge that Plaintiff expected to benefit from those longstanding business relationships when they purchased the goodwill related to Lipscomb Signs, Inc. and continued to do business with the above-mentioned companies.

112.    Upon information and belief, Defendant Shytle wrongfully and intentionally interfered with that expectancy with the help of Defendant Lipscomb.

113.    Upon information and belief, there was a reasonable probability that the Smith's would have received the anticipated economic benefit of those longstanding business relationships in the absence of Defendant Lipscomb and Defendant Shytle's interference, and Plaintiff suffered damages as a result of that interference.

## IV.    Defendant Lipscomb's Interference with the Sale of Legacy 73 Signs, LLC.

114.    On or about October 18, 2020, Mr. Smith met with Mike Wilson (Mr. Wilson) and Debbie Wilson (Mrs. Wilson) of Diversified Signs to discuss the sale of the business from the Smiths to Mr. Wilson.

115.    On or about November 1, 2020, Mr. Smith had a second meeting with Mr. Wilson regarding the sale of the business from the Smiths to Mr. Wilson.

116.    On or about November 16, 2020, Defendant Lipscomb was given a Non-Disclosure agreement. (See attached, as Ex. B)

117.    On or about November 16, 2020, Mr. Smith was advised that when Defendant Lipscomb was provided the NDA, Defendant Lipscomb inquired whether the buyer was aware of Defendant Shytle and Defendant Shytle's business.

118.    Upon information and belief, on or about November 17, 2020, Defendant Lipscomb disclosed that he financed Defendant Shytle to get started in the business of competing with Plaintiff, because he "believed in [Defendant Shytle]".

119.    On or about November 22, 2020, the Smiths met with Mr. Wilson of Diversified Signs for the third time to discuss the sale of the business.

120.    On or about November 28, 2020, Mr. Wilson, and Mrs. Wilson met together with Defendant Lipscomb, regarding the due diligence for the purchase of the Smiths' business by Mr. Wilson.

121.    On or about early December 2020, Mr. Wilson, Defendant Lipscomb, and Defendant Shytle met for an additional meeting without the knowledge of the business broker or the Smiths.

122.    Upon information and belief, Defendant Lipscomb provided negative information

-17-

that was protected by the non-disclosure agreement to Mr. Wilson.

123.     Upon information and belief, Defendant Lipscomb's conduct was a substantial contributing factor to Mr. Wilson not purchasing Plaintiff.

**FIRST CAUSE OF ACTION**
**Breach of Non-Competition/Goodwill Agreement**
**(Defendant Lipscomb)**

124.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

125.     On June 30, 2017, Plaintiff and Defendant Lipscomb entered into the Non-Competition/Goodwill Agreement with Plaintiff.

126.     Defendant Lipscomb received valuable consideration for the Non-Competition/Goodwill Agreement, including but not limited to $60,000 for the non-compete and $940,000 for the goodwill. (See Schedule 2.3 of the Purchase Agreement, attached as Ex. A, Bates Stamped 0124)

127.     The Non-Competition/Goodwill Agreement specifically forbids Defendant Lipscomb from:

a.  Engaging in the design, sale installation, maintenance and removal of signs and related products within 125 miles of 334 Sparks Drive, Forest City, NC 28042 for thirty-six months (the restricted period is extended on a day-to-day basis for the length of any period of time where Defendant Lipscomb is in breach).

b.  Soliciting or attempting to solicit retail, wholesale or any other sign business from any Customers or Prospective Customers of Plaintiff.

c.  Being or becoming a member, shareholder, partner, guarantor, investor, director, consultant or employee or agent of any entity that works in the sign industry.

-18-

d.  Soliciting employees or contractors of Plaintiff to terminate their relationship with Plaintiff for thirty-six months (the restricted period is extended on a day-to-day basis for the length of any period of time where Defendant Lipscomb is in breach); and

e.  Other activities specifically described in the Non-Competition/Goodwill Agreement.

128.  The Non-Competition/Goodwill Agreement also allows for the purchase of all of Defendant Lipscomb's goodwill related to his former company. Goodwill is an intangible asset, that is contractually valued at $940,000.00.

129.  Goodwill is the benefit of a business having a good reputation under its name and regular patronage. Goodwill is important to a buyer, since it guarantees that the business they are purchasing will perform as it has historically.

130.  Valuing the goodwill of Lipscomb Signs, Inc. at $940,000 was of direct benefit to Defendant since he received a substantial tax advantage as it relates to capital gains taxes.

131.  Defendant Lipscomb violated the terms of the Non-Competition/Goodwill Agreement and has been in continuous breach since at least March of 2019.

132.  Defendant Lipscomb has violated the Non-Competition/Goodwill Agreement as follows:

a.  Defendant Lipscomb has encouraged at least one key employee, Defendant Shytle, to leave the employ of Plaintiff and has assisted Defendant Shytle both financially and materially in creating a business that directly competes with the Smith's sign business.

b.  Upon information and belief, Defendant Lipscomb has encouraged other

employees to leave the employ of Plaintiff.

c. Upon information and belief, Defendant Lipscomb encouraged a key employee, Ryan Calhoun, to terminate his contract with Plaintiff. He then became a key contractor for Defendant Shytle Signs.

d. Defendant Lipscomb has actively promoted and marketed Defendant Shytle Sign, a competing business.

e. Upon information and belief, Defendant Lipscomb has encouraged Customers or Prospective Customers of Plaintiff to shift their business to Defendant Shytle Signs.

f. Upon information and belief, Defendant Lipscomb has consulted Defendant Shytle on which vendors to use for various products and services and the associated reasonable costs to give Defendant Shytle a competitive advantage. Further, upon information and belief, Defendant Lipscomb is assisting Defendant Shytle by using his name and experience in the industry to give Defendant Shytle an advantage in negotiating with vendors.

g. Upon information and belief, Defendant Lipscomb has assisted Defendant Shytle in setting up insurance, pricing jobs, acquiring work vehicles, and leasing Defendant Shytle the property next door to the Smith's sign company to directly compete with Plaintiff.

h. Defendant Lipscomb made it known in the community that the Plaintiff business did not have his support/backing, thereby stripping Plaintiff of their bargained-for goodwill. By publicly supporting Defendant Shytle Signs, Defendant Lipscomb essentially took back the goodwill he sold to Plaintiff for $940,000 and gave it to Defendant Shytle.

-20-

i. Numerous other instances described in the factual allegations above and to be determined during discovery.

133. As a direct and proximate result of Defendant Lipscomb's past and ongoing breach of the Non-Competition/Goodwill Agreement, Plaintiff has been damaged, including but not limited to, the consideration paid in the Non-Competition/Goodwill Agreement, the economic damages caused by the loss customers and employees, legal fees, attorneys' fees and other economic damages to be determined during this case.

134. As a direct and proximate result of Defendant Lipscomb's breach of the Non-Competition/Goodwill Agreement, Plaintiff has suffered economic damages in excess of the minimum jurisdictional limits of this Court.

**SECOND CAUSE OF ACTION**
**Tortious Interference with Prospective Economic Advantage**
**(All Defendants)**

135. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

136. Due to Plaintiff's purchase of goodwill from Defendant Lipscomb, and Plaintiff's efforts to utilize said goodwill in the marketplace, Plaintiff has a reasonable expectation of economic advantage and commercial relationships.

137. By selling his goodwill to Plaintiff for $940,000, Defendant Lipscomb knew that Plaintiff expected to derive economic advantage and capitalize on said existing commercial relationships.

138. By entering into the Non-Competition/Goodwill Agreement, Defendant Lipscomb knew that Plaintiff expected to derive economic advantage to capitalize on said existing commercial relationships, contractually protected by the covenants not to compete.

139.    These commercial relationships are defined by Plaintiff being able to keep key employees of Lipscomb Signs, Inc., maintain its ongoing customer relationships, maintain its distribution network, and maintain its relationships with industry players. All of these commercial relationships are integral to the success of the business Defendant Lipscomb sold Plaintiff.

140.    Defendant Lipscomb has breached the Non-Competition/Goodwill Agreement by soliciting past, current and prospective customers to terminate their relationships with Plaintiff and join or do business with Defendant Shytle and Defendant Shytle Sign.

141.    Defendant Lipscomb's conduct is malicious, intentional, without legal justification, and is done with the intent to injure Plaintiff and its sign business.

142.    While under the provisions of the Non-Competition/Goodwill Agreement, Defendant Lipscomb financially and materially assisted Defendant Shytle, a former employee of Plaintiff to set up a business that directly competes with Plaintiff. Moreover, Defendant Lipscomb leased his property adjacent to Plaintiff for Defendant Shytle to operate his competing sign business. Furthermore, Defendant Lipscomb has actively promoted Defendant Shytle's business and encouraged Plaintiff's customers to do business with Defendant Shytle Sign.

143.    Several customers, as described in more detail above, have done business with Lipscomb Signs, Inc. for several years preceding the Purchase Agreement, and continued that business relationship with Plaintiff after the Purchase Agreement.

144.    A number of those customers have ceased doing business with Plaintiff since Defendant Shytle's competing business began operating with the financial assistance and industry know how of Defendant Lipscomb.

145.    There exists a reasonable probability that Plaintiff would have continued to do business with their existing clients and vendors, but for Defendant Lipscomb's interference in

assisting a former key employee, Defendant Shytle, to directly compete with the Smith's sign business.

146.    Defendant Shytle knew that Defendant Shytle Sign was being created with the aid and assistance of Defendant Lipscomb, who had a contractual relationship that expressly forbid such aid and assistance.

147.    By accepting the aid and assistance of Defendant Lipscomb, which was known by Defendant Shytle and Defendant Shytle Sign to be unlawful, Defendant Shytle and Defendant Shytle Sign tortiously interfered with Plaintiff's business operations, depriving Plaintiff of the business and goodwill that they had bargained for with Defendant Lipscomb.

148.    As a direct and proximate result of Defendants' Tortious Interference with Plaintiff's Prospective Economic Advantage, Plaintiff has been damaged, including but not limited to, the consideration paid in the Non-Competition/Goodwill Agreement, the economic damages caused by the loss of customers and employees, legal fees, attorneys' fees and other economic damages to be determined during this case.

149.    As a direct and proximate result of Defendants' Tortious Interference with Plaintiff's Prospective Economic Advantage, Plaintiff has suffered economic damages in excess of the minimum jurisdictional limits of this Court.

150.    Pursuant to N.C.G.S. 1D, *et. seq.,* Plaintiff contends that punitive damages are required to punish Defendant Lipscomb for his wrongful acts and to deter Defendant Lipscomb and others from committing similar wrongful acts.

151.    Defendant Lipscomb acted intentionally, maliciously, willfully, wantonly and in reckless disregard to the rights of Plaintiff bargained for economic rights.

152.    Under the circumstances of this case, in determining punitive damages, the Court

should consider evidence that relates to the following:

        a.     The reprehensibility of the Defendant's motives and conduct.

        b.     The likelihood at the relevant time of serious harm to Plaintiff.

        c.     The degree of the Defendant's awareness of the probable consequences of his conduct.

        d.     The duration of the Defendant's conduct.

        e.     The actual damages suffered by Plaintiff.

        f.     Any concealment by the Defendant of the facts or consequences of their conduct.

        g.     The existence and frequency of any similar past conduct by the Defendant.

        h.     Whether the Defendant profited by the conduct.

        i.     The Defendant's ability to pay punitive damages as evidenced by their revenues or net worth.

153.    As a direct, proximate result of the aforesaid intentional, malicious, willful and wanton conduct of Defendant Lipscomb, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court in punitive damages.

### **THIRD CAUSE OF ACTION**
**Tortious Interference with Business Relations re: Sale of Legacy 73 Signs, LLC**
**(Defendant Lipscomb)**

154.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

155.    The Smiths had a business relationship with a third party, Mr. Wilson, for the sale of Plaintiff. Defendant Lipscomb was aware of the negotiations surrounding the sale of Plaintiff to Mr. Wilson as a potential buyer.

156.    Defendant Lipscomb was under a Non-Disclosure Agreement with Plaintiff while meeting with Mr. Wilson prior to the sale of the business.

157.    Upon information and belief, Defendant Lipscomb provided information to Mr. Wilson that was protected by the non-disclosure agreement.

158.    Upon information and belief, the information provided by Defendant Lipscomb painted Plaintiff in a negative light.

159.    Upon information and belief, Defendant Lipscomb's interference was a substantial contributing factor to Mr. Wilson deciding to not purchase Plaintiff.

160.    As a direct and proximate result of Defendant Lipscomb's Tortious Interference with Plaintiff's business relationship, Plaintiff has been damaged in that they were unable to mitigate the damages caused by Defendants, as outlined in this Complaint, as well as other economic damages to be determined during this case.

161.    As a direct and proximate result of Defendant Lipscomb's Tortious Interference with Plaintiff's business relationship, Plaintiff has suffered economic damages in excess of the minimum jurisdictional limits of this Court.

## FOURTH CAUSE OF ACTION
### Unfair and Deceptive Trade Practices Pursuant to N.C.G.S. §75-1.1
### (Defendant Lipscomb)

162.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

163.    The conduct of Defendant Lipscomb in tortiously interfering with the business of

-25-

Plaintiff amounts to conduct proscribed by N.C.G.S. §75-1.1, et. seq., to §75-16.2 as unfair and deceptive trade practices under North Carolina law subjecting Defendant Lipscomb to damages described in N.C.G.S. §75-16, etc. and attorneys' fees in N.C.G.S. §75-16.1(1).

164. By tortiously interfering with the business of Plaintiff, Defendant Lipscomb engaged in practice that was unfair and deceptive trade practice pursuant to N.C.G.S. §75-1.1, et. seq., to §75-16.2 that offended public policy, was immoral, unethical, oppressive, unscrupulous and substantially injurious to the Smith's sign business.

165. Defendant Lipscomb was engaged in and affected trade or commerce within the meaning of N.C.G.S. §75-1.1 when he damaged Plaintiff's sign business.

166. Defendant Lipscomb upon information and belief willfully violated N.C.G.S.§75-1.1, et. seq., to §75-16.2.

167. The conduct of Defendant Lipscomb qualifies as unfair and deceptive trade practices under N.C.G.S.§75-1.1, et. seq., to §75-16.2 and the damages to Plaintiff's business should be trebled pursuant to that statute and Defendant Lipscomb are liable for all court costs and reasonable attorney fees pursuant to that statute.

**FIFTH CAUSE OF ACTION**
**Civil Conspiracy**
**(All Defendants)**

168. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

169. Defendant Shytle knew that Defendant Shytle Sign was being created with the aid and assistance of Defendant Lipscomb, who had a contractual relationship that expressly forbid such aid and assistance.

170. By accepting the aid and assistance of Defendant Lipscomb, which was known by

-26-

Defendants Shytle and Shytle Sign to be unlawful, Defendants Shytle and Shytle Sign were acting in concert with Defendant Lipscomb.

171.     Defendant Lipscomb, Defendant Lipscomb's family, Defendant Shytle and Defendant Shytle's family agreed and conspired to unlawfully compete with Plaintiff's sign business.

172.     Upon information and belief, these actions were concerted and performed with the intent to unlawfully convert the Plaintiff's business.

173.     Each incident of contacting past and prospective customers of Plaintiff, as fully described in this Complaint is considered an individual racketeering activity.

174.     Defendants conduct and actions establishes a pattern of racketeering behavior.

175.     Defendants' conduct was for their pecuniary gain.

176.     Presently, Plaintiff does not have evidence that Defendants and their familial co-conspirators' racketeering behavior included mail fraud, wire fraud or fraud in the sale of securities. However, should evidence be discovered, Plaintiff reserves the right to amend this Complaint with a cause of action under 18 U.S. Code Chapter 96 – Racketeer Influenced and Corrupt Organizations Act.

177.     As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has been damaged, including but not limited to, the consideration paid in the Non-Competition/Goodwill Agreement, the economic damages caused by the loss customers and employees, legal fees, attorneys' fees and other economic damages to be determined during this case.

178.     As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered economic damages in excess of the minimum jurisdictional limits of this Court.

## SIXTH CAUSE OF ACTION
### Conversion
### (All Defendants)

179.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

180.    On or about April 1, 2019, Defendants directed employees of Plaintiff to remove a digital display owned by Plaintiff and move it to the property owned by Defendant Lipscomb, where Shytle Sign currently does business.

181.    At the time Defendants came into possession of the digital display, Plaintiff was its lawful owner, as evidenced by Schedule 1.1 FFE of the Purchase Agreement, referring to "all non-personal items in shop and fabrication departments." (See Schedule 1.1 FFE, Exhibit A, Bates Stamped 0104-0107)

182.    Plaintiff was entitled to the immediate possession of the digital display.

183.    Defendants converted the digital display to their own use through the unauthorized exclusion of Plaintiff from exercising their rights of ownership over the digital display.

184.    As a direct and proximate result of Defendants' conversion, Plaintiff has been damaged in the amount of the value of the stolen property.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial of all claims and matters set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, **Plaintiff Legacy 73 Signs, LLC** respectfully prays for judgment against the Defendants as follows:

1. For compensatory damages, *inter alia* consideration paid in the Non-Competition/Goodwill Agreement, the economic damages caused by the lost customers and employees, legal fees, attorneys' fees and other economic damages **from Defendant Lipscomb** for his breach of contract, tortious interference with business relations re: sale of Legacy 73 Signs, LLC and unfair and deceptive trade practices, in amounts proven at trial.

2. For compensatory damages, *inter alia* consideration paid in the Non-Competition/Goodwill Agreement, the economic damages caused by the lost customers and employees, legal fees, attorneys' fees and other economic damages **from all Defendants,** jointly and severally, for their tortious interference with prospective economic advantage, civil conspiracy and conversion, in amounts proven at trial.

3. For punitive damages, as may be awarded by a jury, under both the common law and Constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1 *et seq.* as to **Defendant Lipscomb** for his tortious interference with prospective economic advantage.

4. For pre-judgment and post-judgment interest on all amounts found due to Plaintiff at the legal rate.

5. For treble damages for **Defendant Lipscomb's** unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-16.

6. For the costs of suit, including an award of reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16(d) and/or §4 of the Non-Competition/Goodwill Agreement.

7. For such other and further relief as may be just, proper, and necessary to afford

complete relief to Plaintiff and to provide Plaintiff that to which it is entitled at the time this action is tried.

**This the 30th day of April, 2021.**

/s/Mathew E. Flatow
Mathew E. Flatow
mathew@seiferflatow.com
N.C. Bar No. 35282

/s/V. James Filliben, III
V. James Filliben, III
james@seiferflatow.com
N.C. State Bar No. 40247

SeiferFlatow, PLLC
2319 Crescent Avenue
Charlotte, NC 28207
P: (704) 512-0606
F: (704) 314-0677

*Attorneys for Plaintiff*

-30-

## VERIFICATION

The UNDERSIGNED, first being duly sworn, deposes and says: That as Member-Managers of Plaintiff, that I have read the foregoing and know the contents thereof to be true, except for matters alleged upon information and belief, and as to those matters I am informed and believe them to be true.

This the 29th day of April, 2021.



_____
DAVID M. SMITH, on behalf of
LEGACY 73 SIGNS, LLC

_____
JAMIE M. SMITH, on behalf of
LEGACY 73 SIGNS, LLC

Sworn to and subscribed before me
this the 21 day of _____April_____, 2021.

_____
NOTARY PUBLIC

My commission expires: Aug 31, 2030