IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00124-MR-WCM

| | |
|---|---|
| LEGACY 73 SIGNS, LLC, ) <br> on the authority of its member- ) <br> managers, David M. Smith and ) <br> Jamie M. Smith, ) <br> ) <br>      Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> GERALD LIPSCOMB, individually ) <br> and d/b/a Shytle Sign and Lighting ) <br> Services, LLC; GARY DEAN ) <br> SHYTLE, individually and as ) <br> member, co-owner and operator ) <br> of Shytle Sign and Lighting ) <br> Services, LLC; and SHYTLE SIGN ) <br> AND LIGHTING SERVICES, LLC, ) <br> ) <br>      Defendants. ) <br> _____ ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the Court on Plaintiff's Motion to Dismiss (Doc. 12), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.     **Relevant Procedural History**

On April 30, 2021, Plaintiff Legacy 73 Signs, LLC ("Legacy") filed its Complaint. Doc. 1.

1

On July 2, 2021, Defendants filed an Answer and Counterclaim which contained counterclaims by Defendant Gerald Lipscomb ("Lipscomb"). Doc. 9.

On July 23, 2021, Legacy filed the Motion to Dismiss, which seeks the dismissal of Lipscomb's counterclaims, along with a supporting memorandum. Docs. 12, 13. Lipscomb has responded, and Legacy has replied. Docs. 14, 15.

## II. Lipscomb's Allegations[1]

Lipscomb's counterclaims allege as follows:

Legacy and Lipscomb entered into an Agreement for Purchase and Sale of Assets ("Purchase Agreement") that was dated June 30, 2017. A copy of the Purchase Agreement is attached to Legacy's Complaint. (Doc. 1 – 1). Doc. 9 at ¶ 5.

---

[1] In the Complaint, Legacy claims that Lipscomb violated the terms of a non-compete agreement in relation to the sale of Lipscomb Signs, Inc.'s assets and the attendant goodwill and, after the sale, interfered with Legacy's business, solicited Legacy's employees, interfered with Legacy's customer contracts and effectively destroyed and/or usurped the goodwill sold to Legacy. In addition, Legacy claims that Lipscomb actively assisted Legacy employee Gary Dean Shytle to leave Legacy and set up a competing sign business—Shytle Sign and Lighting Services, LLC—in a warehouse Lipscomb owned, immediately next door to Legacy. Doc. 1 at ¶¶1-2. To the extent the factual allegations of the Complaint do not appear in the counterclaims, they have not been considered in connection with this Memorandum. See e.g., Loup Logistics Co. v. Windstar, Inc., No. 17 C 9045, 2018 WL 5619454, at *3 n.1 (N.D. Ill. Oct. 30, 2018) (citing Terrell v. Childers, 889 F. Supp. 311, 314 (N.D. Ill. 1995)) ("In considering Loup Logistics' motion to dismiss, the Court is limited to the face of the counterclaim—it may not consider the allegations of the underlying complaint.").

2

The Purchase Agreement was made between Lipscomb Signs, Inc. as the seller, Lipscomb as the shareholder, Legacy as the buyer, and David M. Smith and Jamie M. Smith as guarantors. Doc. 1 – 1 at 2.

Lipscomb alleges that Section 7 of the Purchase Agreement "governs continued management assistance and consulting performed by Lipscomb for Legacy after closing of the sale." In particular, Lipscomb was required to assist Legacy at first for no additional compensation and then subsequently on a paid basis. These terms were also "documented by a Consulting Agreement attached to and incorporated into the Purchase Agreement." Doc. 9 at ¶ 6. The Consulting Agreement is attached as Exhibit F to the Purchase Agreement and also appears in the record. Doc. 1-1 at 64.[2]

Lipscomb alleges that the Consulting Agreement also required Legacy to pay him a 5% commission on any project with which Lipscomb assisted. Doc. 9 at ¶ 7.

From August 15, 2017 to February of 2018, "Lipscomb provided consulting services to Legacy, delivered sales for Legacy, and provided 'hands on labor' to fabricate various sign prototypes." Id. at ¶ 8.

---

[2] The Purchase Agreement and the Consulting Agreement may be considered in connection with the Motion to Dismiss. See e.g., Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

Lipscomb alleges that he was never paid either his hourly rate or a commission payment for these services. Id. at ¶ 9.

Lipscomb also alleges that the Purchase Agreement, on Schedule 3.1, identified inventory items that were subject to transfer. Id. at ¶ 10.

Many of these items were stored in a gravel lot between the Lipscomb Signs building, which Lipscomb leased to Legacy, and another building owned by Lipscomb ("Gravel Lot"). Also in the Gravel Lot were items that belonged to Lipscomb and that were not subject to transfer or listed on Schedule 3.1. To differentiate between the inventory items and Lipscomb's personal property, "the Parties marked those items to be transferred with orange spray paint." Id. at ¶ 11.

Lipscomb alleges that Legacy took the unmarked property, which belonged solely to Lipscomb, and "by information and belief converted to its own use, various salvage materials including steel, aluminum, pipe, tubing, and vintage signs." Lipscomb did not give Legacy permission for this activity and was not compensated for his property. Id. at ¶ 12.

Around the same time, Legacy installed a steel cable across the Gravel Lot, separating the leased premises from the premises retained by Lipscomb. The installation of the cable made the Gravel Lot inaccessible by vehicles with trailers, which were necessary to move many of the items from the Gravel Lot. Consequently, Lipscomb was forced to construct a new entrance ramp into the

Gravel Lot. Lipscomb alleges that the cable fence served no legitimate purpose and was installed solely to annoy and harass Lipscomb. Id. at ¶¶ 13 – 15.

Lipscomb's counterclaims assert claims for breach of contract and conversion.

### III. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).[3]

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when

---

[3] The standard for reviewing a Rule 12(b)(6) motion to dismiss a counterclaim is the same as would be applied in considering a motion to dismiss a complaint. See e.g., Sand Canyon Corp. v. Bank of New York Mellon, No. CV GLR-19-2815, 2021 WL 3172274, at *3 (D. Md. July 27, 2021).

5

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

IV. Discussion

A. Breach of Contract

Legacy argues that Lipscomb's breach of contract claim should be dismissed as time-barred.

Under North Carolina law, the statute of limitations for a breach of contract claim is three years. N.C. Gen. Stat. § 1-52(1). The limitations period "for a breach of contract claim begins to run on the date the promise is broken." Harrold v. Dowd, 149 N.C. App. 777, 781, 561 S.E.2d 914, 918 (2002) (citations omitted).

> Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, see Fed.R.Civ.P. 8(c), and the burden of establishing the affirmative defense rests on the defendant. See Newell v. Richards, 323 Md. 717, 594 A.2d 1152, 1156 (1991); accord Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 427 F.2d 862, 870 (4th Cir.1970). It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the

6

complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint.*" *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (emphasis added); *accord Desser v. Woods,* 266 Md. 696, 296 A.2d 586, 591 (1972).

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).

In this case, Section 7 (Management Assistance and Consulting) of the Purchase Agreement reads as follows:

    7.1    Management Assistance.

Shareholder agrees to provide assistance and training to Buyer in the transfer of management and operation of the Business during normal business hours at the Facility for a period of four (4) weeks or twenty (20) business days for eight hours per day following Closing (the "Management Assistance Period"), without additional consideration by Buyer to Shareholder. The Buyer and Shareholder agree to mutually agree on days and times to be scheduled and further agree that the days worked by Seller to assist in the transition to not have to run concurrently.

    7.2    Consulting Agreement.

Following the expiration of the Management Assistance Period as outlined in Section 7.1, Shareholder agrees to provide consulting services to

7

Buyer in the operation of the Business as outlined below and pursuant to the agreement (the Consulting Agreement") attached as Exhibit F hereto:

> (a) Months 2 – 7 after Closing, not to exceed twenty-four (24) hours per week and compensated at the hourly rate of $50 per hour.
>
> (b) Months 8-13 after Closing, not to exceed sixteen (16) hours per week and compensated at a rate of $75 per hour.
>
> (c) Months 14 – 19 after Closing, not to exceed eight (8) hours per week and compensated at the hourly rate of $100 per hour.

Purchaser agrees to compensate Shareholder a commission of five percent (5%) on any sales that Shareholder closes and assists in the project management of the closed sale as shown in the Consulting Agreement attached as Exhibit F hereto.

Doc. 1 – 1 at 6.

The Consulting Agreement states in part as follows:

During the Management Assistance Period, as defined above, Consultant will provide assistance and training to Purchaser in the transfer of management and operation of the Business without additional compensation by Company to Consultant. Immediately following the Management Assistance Period, the Company shall pay to the Consultant compensation at the following hourly rates:

> (a) August 5, 2017 to February 5, 2017 [sic]: Fifty and No/100 Dollars ($50.00) per hour.

8

(b) February 6, 2017 [sic] to August 5, 2018 Seventy-Five and No/100 Dollars ($75.00) per hour.

(c) August 6, 2018 to February 5, 2019: One Hundred and No/100 Dollars ($100.00) per hour.

Consultant's compensation for Services shall be payable in weekly payments, with each compensation payment due in arrears after the end of each week in which Services are rendered hereunder.

. . .

Company shall pay to Consultant a commission of five percent (5%) on any projects that Consultant assists with the sales process or project management. Consultant's time spent on projects in which a commission is paid will not be compensated with the hourly consulting rate (commission only).

Doc. 1 – 1 at 66-67.

The Consulting Agreement also contains a waiver provision which provides that "[n]either the failure nor any delay by any party hereto in exercising any right, power, or privilege under this Agreement will operate as a waiver . . . ." Doc. 1 – 1 at 67.

In support of its Motion to Dismiss, Legacy argues that Lipscomb's breach of contract claim is untimely because it was filed more than three years after the "promise to pay was broken." Doc. 13 at 6. In particular, Legacy states that, because the Consulting Agreement provides for payment "in weekly payments, with each compensation payment due in arrears after the end of

each week in which Services are rendered hereunder," the last date a payment could have been due to Lipscomb, based upon his allegations, was March 2, 2018. Doc. 15 at 2, 6 (citing Doc. 1 – 1 at 67). That date, Legacy argues, is the latest possible date from which the statute of limitations could have begun to run.

In opposition, Lipscomb argues that his counterclaim for breach of contract is timely because it was filed within three years from the last date on which he was obligated to provide consulting services, February 5, 2019. Doc. 14 at 2 – 4. In addition, he contends that the provision relating to compensation based on a five percent (5%) commission has no expiration date and that the waiver provision also protects his breach of contract claim.

With respect to Lipscomb's hourly compensation for consulting services, the undersigned is persuaded by Legacy's argument. The Purchase Agreement and the Consulting Agreement contemplated that after the initial period following closing during which Lipscomb was not entitled to be paid – the Management Assistance Period – he would provide and would be paid for a decreasing number of hours of service per week at an increasing rate of pay, with this obligation to conclude on February 5, 2019.

The factual allegations in Lipscomb's counterclaim, however, state specifically that Lipscomb provided consulting services from August 15, 2017 to February of 2018; that is, while Section 1 (Consulting Services) of the

10

Consulting Agreement stated that Lipscomb was agreeing "to provide such services to [Legacy] related to the Business of the Company (the "Business" as defined in the Purchase Agreement) as requested by the Company from time-to-time (the "Services")," Doc. 1 – 1 at 65, and that those services would require Lipscomb to work specified hours, Lipscomb's own allegations indicate that he actually only provided consulting services until February 2018.

Pursuant to the Consulting Agreement, Lipscomb's compensation for the consulting services was to be paid in weekly payments, with each payment due in arrears after the end of each week in which the services were rendered. Consequently, Legacy was required to compensate Lipscomb for services provided in February 2018 no later than the first week of March 2018. To the extent that Legacy failed to make payments on the agreed schedule, each failure constituted an independent breach of Legacy's obligations against which the statute of limitations began to run. See Martin v. Ray Lackey Enters., Inc., 100 N.C.App. 349, 357, 396 S.E.2d 327, 332 (1990) ("Generally, where obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due."). Because Lipscomb's counterclaim seeking payment of amounts allegedly owing to him was not filed until more than three years after the payments were missed, his claim for those missed payments is time-barred.

As for Lipscomb's argument that the waiver provision preserves his claim, Lipscomb has provided no authorities to support the proposition that such a clause would toll the statute of limitations.

Therefore, the undersigned will recommend that Lipscomb's breach of contract claim be dismissed as to any claim for hourly compensation.

With respect to Lipscomb's claim for unpaid commissions, his counterclaim alleges that between August 15, 2017 and February 2018, Lipscomb "delivered sales for Legacy" but that he was not paid commissions for assisting with any specific project. Doc. 9 at ¶¶ 8 – 9.

Unlike for the hourly consulting services, neither the Purchase Agreement nor the Consulting Agreement set a specific time by which sales commissions were to be paid to Lipscomb. When a specific date for payment is not specified, "payment on a contract must be made within a commercially reasonable time." Goodman, 494 F.3d at 465 ("[I]t is impossible to infer from the complaint the date when the breach occurred, since no date for payment was specified in the contract itself.").

Given the lack of information in the contracts as to a deadline by which Legacy was to pay sales commissions, and without additional information regarding the date of the breach, a determination as a matter of law that Lipscomb's claim for those unpaid commissions is time-barred cannot be made at this stage.

### B. Conversion

Legacy argues that Lipscomb's claim for conversion fails to meet federal pleading standards because it does not identify the property that was converted or allege a time period when the conversion occurred. Doc. 13 at 7.

"There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citing Gadson v. Toney, 69 N.C.App. 244, 246, 316 S.E.2d 320, 321–22 (1984)).

In this case, Lipscomb has alleged that he owned certain property that was stored in the Gravel Lot, and that Legacy removed the property without his consent and without compensating him. Doc. 9 at ¶¶ 11, 12. Though Lipscomb does not provide a comprehensive list of the items allegedly taken, he identifies them as being "various salvage materials including steel, aluminum, pipe, tubing, and vintage signs." Id. at ¶ 12. In addition, he describes these materials as being property other than the items that had been marked with orange spray paint so they could be transferred to Legacy pursuant to the Purchase Agreement. Under these circumstances, the undersigned is satisfied that Lipscomb has provided sufficient information to identify the property in question.

13

Finally, as to the issue of timing, "[c]onversion claims are subject to a three-year limitation period" and "[a]s a general rule, the claim accrues, and the statute of limitations begins to run, when the unauthorized assumption and exercise of ownership occurs—not when the plaintiff discovers the conversion." Stratton v. Royal Bank of Canada, 211 N.C.App. 78, 83, 712 S.E.2d 221, 227 (2011). "Whether a claim is time-barred is a mixed question of law and fact." Id.

Legacy is correct that Lipscomb's counterclaim does not provide a specific date on which he alleges the conversion occurred, and, given that the Purchase Agreement is dated June 30, 2017, it is possible that his counterclaim for conversion was brought more than three years after the alleged conversion took place.

However, as discussed above, for a motion to dismiss to be decided on the basis of a statute of limitations defense, all of the facts necessary to establish the defense must appear on the face of the complaint. See Goodman, 494 F.3d at 464. As the existing record does not provide this level of specificity, Legacy's statute of limitations defense as to Lipscomb's conversion claim cannot be fully analyzed at this time.

Therefore, the undersigned will recommend that Legacy's motion be denied as to Lipscomb's claim for conversion.

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 12) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That Lipscomb's counterclaim for breach of contract be **DISMISSED** to the extent it is based on Legacy's failure to compensate Lipscomb for hourly consulting services.
2. That in all other respects the Motion to Dismiss be **DENIED**.

Signed: November 5, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).