## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 1:21-cv-124

| | |
|---|---|
| **LEGACY 73 SIGNS, LLC, on the authority of its member-managers, David M. Smith and Jamie M. Smith,** <br><br>      **Plaintiff/Counterclaim Defendant,** <br><br> **v.** <br><br> **GERALD LIPSCOMB, individually and d/b/a Shytle Sign and Lighting Services, LLC,** <br><br> **GARY DEAN SHYTLE, individually and a member, co-owner and operator of Shytle Sign and Lighting Services, LLC,** <br><br> **and** <br><br> **SHYTLE SIGN AND LIGHTING SERVICES, LLC,** <br><br>      **Defendants/Counterclaim Plaintiff Lipscomb.** | **PLAINTIFF/COUNTERCLAIM DEFENDANT LEGACY 73 SIGNS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Plaintiff/Counterclaim Defendant LEGACY 73 SIGNS, LLC ("Plaintiff"), by and through undersigned counsel, hereby submits this Memorandum in Support of Motion for Summary Judgment against Defendants GARY DEAN SHYTLE ("Shytle") and SHYTLE SIGN AND LIGHTING SERVICES, LLC ("Shytle Sign")

and Defendant/Counterclaim Plaintiff GERALD LIPSCOMB'S ("Lipscomb") (collectively referred to as "Defendants") counterclaim and states as follows:

## **INTRODUCTION**

This matter arises out of a dispute between the parties following the June 2017 sale of a commercial sign installation business in Forest City, North Carolina. The business was sold by Lipscomb to Plaintiff and its members David M. Smith ("Dave") and Jamie M. Smith ("Jamie"). As part of the sale, Lipscomb signed a Non-Competition/Goodwill Purchase Agreement ("Agreement") which ran from June 30, 2017, through July 1, 2020. The Agreement provided a day-to-day tolling if Lipscomb violated the Agreement.

In this Memorandum, Plaintiff will demonstrate that the undisputed factual record shows that Lipscomb and Shytle conspired and successfully executed an elaborate scheme designed to force Plaintiff out of business in Forest City. The scheme, as laid out in copious and detailed text messages between Defendants, involved creating a new commercial sign installation business and locating it on property directly adjacent to Plaintiff. Once created, the competing business actively solicited Plaintiff's key employees and customers. All of Defendants' violative conduct is documented in their own words. Defendants' undisputed conduct runs afoul of Lipscomb's obligations in the Agreement and Shytle's duties as an active employee of Plaintiff. The scheme was successful and caused Plaintiff to lose

significant money and close their shop in Forest City.

Plaintiff is respectfully requesting that the Court grant relief in the form of 1) a judgment in Plaintiff's favor as to liability for each cause of action pled in the Complaint; 2) a dismissal of Defendant Lipscomb's remaining counterclaim; and 3) a trial on compensatory and punitive damages.

## PROCEDURAL HISTORY

On April 30, 2021, Plaintiff filed suit alleging six causes of action: 1) Breach of the Non-Competition/Goodwill Agreement; 2) Tortious Interference with Prospective Economic Advantage; 3) Tortious Interference with Business Relations re: Sale of Plaintiff; 4) Unfair and Deceptive Trade Practices Pursuant to N.C.G.S. §75-1.1; 5) Civil Conspiracy; and 6) Conversion. Doc. 1. On July 2, 2021, Defendants filed their Amended Answer and Lipscomb filed his Counterclaim, alleging two causes of action: (1) Breach of Contract; and (2) Conversion. This Court dismissed Lipscomb's breach of contract claim. Doc. 9.

The parties have engaged in discovery, including depositions and reviewed electronically stored information from various devices. Attached to this memorandum are the relevant potions of the depositions and documents exchanged in discovery. See attached Exhibits A-F. In addition, Plaintiff submits its Statement of Undisputed Material Facts in support of its Motion for Summary Judgment. See attached Appendix A.

## STANDARD OF REVIEW

"Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Russell v. BSN Med., Inc.*, 721 F. Supp. 2d 465, 471 (W.D.N.C. 2010)) (quoting Fed. R. Civ. P. 56(c)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## ARGUMENT

In June of 2017, Lipscomb sold his business to Plaintiff for $1,665,000.00. Doc 1.1, p. 3. By February of 2019, Lipscomb started violating the Agreement and committing torts against Plaintiff along with his accomplice, Shytle. Lipscomb:

1)      Engaged in designing commercial signs in violation of Section 2.1(a) of the Agreement within the Agreement's Restricted Area during the Agreement's Restricted Period. App. A, ¶¶ 27, 67, 69, 75.

2)      Messaged former customers of Plaintiff to refer them to Shytle/Shytle Signs, violating Section 2.1(b) of the Agreement. Id. at ¶¶ 23, 25, 33, 36-38, 45-46, 48, 55-57, 64, 68(c).

3)     Generated a list of customers for Shytle/Shyle Signs, violating Section 2.1(b) of the Agreement to not solicit Lipscomb Signs' customers. Id. at ¶¶ 33, 33(e)

4)     Forwarded new customer leads to Shytle/Shyle Signs, violating Section 2.1(c) of the Agreement not to solicit new customers. Id. at ¶ 95.

5)     Served as Shytle Signs guarantor by holding a lien on Shytle Signs' trucks and equipment, violating Section 2.1(d) of the Agreement to not act as a guarantor, investor, consultant, and agent of a competitor. Id. at ¶¶ 24(b), 34, 74.

6)     Served as Shytle Sign's investor by loaning hundreds of thousands of dollars to Shytle/Shyle Signs, violating Section 2.1(d) of the Agreement to not act as a guarantor, investor, consultant, and agent of a competitor. Id. at ¶¶ 23, 29, 47, 53, 84.

7)     Worked as a consultant by assisting Shytle/Shyle Signs with pricing, designing, and finding vendors, violating Section 2.1(d) of the Agreement to not act as a guarantor, investor, consultant, and agent of a competitor. Id. at ¶¶ 30, 32, 33, 42, 55, 65.

8)     Worked as an agent by negotiating for the purchase of vehicles, violating Section 2.1(d) of the Agreement to not act as a guarantor, investor, consultant, and agent of a competitor. App A., ¶¶ 21-23, 38, 63.

9)     Solicited multiple employees of Plaintiff while they were actively employed with Plaintiff, violating Section 2.3 of the Agreement. Id. at ¶¶ 13, 20, 23.

10)     Failed to transfer the goodwill purchased by Plaintiff for $960,000 and instead did everything in his power to put Plaintiff out of business through a scheme of creating a new, competing sign business and systematically working to transfer all of Plaintiff's customers and key employees over to the new business. Id. at ¶¶ 23, 25, 29, 33, 36-38, 45-46, 48, 55-57, 64, 68(c), 73, 95.

11)     Engaged in dishonest practices after the sale, for example, logging into an email he sold to Plaintiff to forward customer leads. Id. at ¶¶ 95, 101.

12)     Took actions to keep Plaintiff's profits as low as possible, including pitching an idea for Shytle to get all the Plaintiff employees to quit and then rehire them at Shytle Signs, thereby capitalizing on the name Lipscomb Signs. Id. at ¶ 70.

13)     Asking employees of Plaintiff to assist him in the removal of a digital display sign on Plaintiff's property that had been sold as part of the Agreement, thereby converting the sign to his own use. Id. at ¶ 39.

## I.     SUMMARY JUDGMENT IS APPROPRIATE AS THERE EXISTS NO GENUINE ISSUE OF MATERIAL FACT

### A. Lipscomb's Actions Were a Breach of the Non-Competition/Goodwill Agreement and along with Shytle, they Interfered with Plaintiff's Prospective Economic Advantage and Business Relations

In the context of a sale of a business, non-compete covenants are enforceable "'(1) if it is reasonably necessary to protect the legitimate interest of the purchaser; (2) if it is reasonable with respect to both time and territory; and (3) if it does not

interfere with the interest of the public.'" *Beverage Sys. Of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 461 (2016) (quoting *Jewel Box Stores Corp. v. Morrow*, 158 S.E.2d 840, 843 (1968)). The Supreme Court of North Carolina has long held that "'a restrictive covenant, contained in a contract for the sale of a business, including the good-will of the vendor, . . . by which the vendor agrees not to enter into competition, directly or indirectly, with the vendee, in the conduct of said business is valid.'" *Lunsford v. Viaone Servs., LLC*, 2020 NCBC LEXIS 111, *12, 2020 NCBC 68, 2020 WL 4745733 (quoting *Moskin Brothers, Inc. v. Swartzberg*, 155 S.E. 154, 157 (1930)).

In *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299 (1985), plaintiff-purchaser of a business alleged breach of a non-compete covenant by the defendant-seller. The defendant agreed not to "directly or indirectly . . . own, . . . or be connected in any manner with, any business which is a competitor of the" plaintiff. The defendant breached the non-compete covenant by leasing the premises adjoining the property rented to the plaintiff to a third party, while aware that the third party intended to establish a business to compete with the plaintiff. The defendant also loaned money to the third party to enable him to set up the competing business. Here the court said that "assistance rendered to another who is engaged or about to engage in a competing business is a breach of a covenant not to compete . . . " *Id*. at 229 (internal quotation and citation omitted). Holding the covenant not to compete as

valid, the court granted the plaintiff's motion for summary judgment.

The parties here agree that the Non-Competition Agreement entered on June 30, 2017, is valid. Doc. 1, ¶ 23; Doc. 9, ¶ 23. Recital B of the Non-Competition agreement specifically provides that "[s]eller and Lipscomb have, for several years, developed relationships and goodwill with all Seller's Customers, which are instrumental to the profitability and success of the operations and possess certain trade secrets and other confidential information and data relating to Seller and Seller's business;" Doc. 1-1, p. 59, § 2(1)(a). The Non-Competition Agreement barred any competitive acts for thirty-six (36) months, running from June 30, 2017, ending July 1, 2020, within a radius of one hundred twenty-five (125) miles from the premises that Plaintiff leased. Id. at p. 60, §§ 2.4, 2.5. The Non-Competition Agreement also contained a tolling provision, that any violation of the agreement would extend the restricted period on a day-for-day basis. Id. at p.60, § 2.4. During the restricted period, Lipscomb was prohibited from:

i.  Engaging in the "design, sale, installation, maintenance and removal of signs and related products . . . " Doc. 1-1, p. 59, § Section 2.1(a).

ii.  Efforts to "solicit or attempt to solicit retail, wholesale or any other sign business from Customer(s) Prospective Customer(s) of [Lipscomb Signs] except on behalf of [Plaintiff] . . . " Doc. 1-1, p. 60, § Section 2.1(b).

iii.   Becoming "a member, shareholder, partner, guarantor, investor, director, consultant or employee or agent of any entity . . . " that competes with Plaintiff. Doc. 1-1, p. 60, § Section 2.1(d).

iv.   Soliciting employees from the Plaintiff. Doc. 1-1, p. 60, § Section 2.3.

### i. Lipscomb Engaged in the Design and Installation of a Sign for Carolina Auto Finance

On March 4, 2019, Lipscomb started to design a new sign for Carolina Auto Finance, by texting Shytle to ask for help with the lettering. App. A, at ¶ 27. On March 24, 2020, Lipscomb logged into his Lipscomb Signs business email address (geraldlipscomb@bellsouth.net; "Bellsouth Address"), an address that was sold to Plaintiff in the purchase agreement. Id. at ¶¶ 4, 5, 67. Using the Bellsouth Address, Lipscomb sent vendor LSI Industries an email requesting a quote for materials for a sign he was designing and constructing. Id. at ¶ 67. On May 8, 2020, Lipscomb again used the Bellsouth Address to forward an email to his personal email address (gerald.lipscomb@hotmail.com; "Hotmail Address") which contained his design for the Carolina Auto Finance sign. Id. at ¶ 69. On June 9, 2020, Lipscomb obtained a quote for production of the sign, approved the production the same day and June 10, 2020, received confirmation of his order. Id. at ¶ 75. On June 30, 2020, the Carolina Auto Finance sign was ready to be picked up. Id. at ¶ 79. On July 3, 2020, Lipscomb employed Shytle Signs to install the sign for Carolina Auto Finance. Id. at ¶ 81. Lipscomb eventually hired Shytle Signs to install the sign for Carolina Auto Finance,

which violated Section 2.1(a) of the Agreement not to design or install a sign within the Restricted Area during the Restricted Time Period.

### ii. Lipscomb Engaged in Efforts to Solicit Lipscomb Signs/Plaintiff's Clients for Shytle/Shytle Signs

On or about March 2, 2019, Lipscomb texted Shytle that he sent the following text to Gary Mossburg ("Mossburg"), a former client of Plaintiff, "Gary, I think I have the solution for the Spartanburg regional job with a great guy you can trust. As you know, I can't get involved because of noncompete. Mat Caldwell in Kings Mountain can build a job and this guy can install it all day long! Call me when you get a minute." Lipscomb then forwarded that message to Shytle. App. A, ¶ 25(j). Mossburg owns Mossburg Signs, Plaintiff's customer. App. B, at ¶ 14. Lipscomb solicited a prospective customer of Plaintiff, which violated Section 2.1(b) of the Agreement to not solicit Plaintiff's customers during the Restricted Time Period.

On March 10, 2019, Lipscomb texted Shytle, "I am making a list of companies that you could do the installs for, if you have not already started such as that is I am making a list of companies that you could do the installs for, if you have not already started such as Pattinson, Federal heath, And others. I will make a list of oil companies locally that you can send intro Letter and service offered." App. A, at ¶ 33. Lipscomb created and provided a list of prospective clients to Shytle to assist Shytle Signs, which violated Section 2.1(c) of the Agreement not to solicit new customers within the Restricted Area during the Restricted Time Period.

### iii. Lipscomb was a Guarantor, Investor, Consultant, and Agent for Shytle Signs

On or about February 28, 2019, Lipscomb became an investor when Lipscomb provided funds to Shytle to purchase a 2004 International Series 4300 Model work truck from Jim Eckstein. App. A, at ¶ 23. On or about March 7, 2019, Lipscomb invested $75,0000 in Shytle Signs. App. A, at ¶ 29. On March 12, 2019, Lipscomb became a guarantor when Shytle registered a 2004 International Series 4300 Model work truck, purchased from Jim Eckstein, with Lipscomb listed as the lien holder. Id. at ¶ 36. On February 28, 2019, Lipscomb texted Shytle that Lipscomb negotiated the purchase of a truck with Jim Eckstein on behalf of Shytle to assist Shytle in starting Shytle Signs. Id. at ¶ 23. On multiple dates during 2019, Lipscomb acted as a consultant for Shytle, answering questions and providing advice regarding how to form a business, offering to act as reference, advising on how to complete a sign project, how to price and negotiate hourly work, and assisting Shytle in finding vendors and suppliers. Id. at ¶¶ 23, 24, 25, 26, 30, 43. Lipscomb acted as a guarantor, investor, consultant, and agent for Shytle and Shytle Signs, which violated Section 2.1(d) of the Agreement to not act as a guarantor or investor, consultant, and agent of a competitor during the Restricted Time Period.

### iv. Lipscomb Solicited Plaintiff's Employees to Work for Shytle Signs

On August 2, 2018, Lipscomb texted Shytle about working for Lipscomb and

Lipscomb's son Gerry Lipscomb ("Gerry") and paying cash. App. A, at ¶ 13. In the same message Lipscomb asked Shytle to ask three other Plaintiff employees if they were interested in the same employment. Id. On August 3, 2018, Lipscomb offered Shytle $1,000.00 cash to work for Gerry. Id. at ¶ 14. On January 7, 2019, Lipscomb offered Shytle $1,000.00 per week cash while Shytle took vacation from Plaintiff. Id. at ¶ 17. On February 6 and again February 12, 2019, Lipscomb offered cash payments to Shytle to work for Lipscomb and Gerry. Id. at ¶¶ 19-20. On February 12, 2019, Lipscomb reiterated his offer was open to other Plaintiff employees as well. Id. at ¶ 20. Lipscomb directly and indirectly solicited Plaintiff employees with employment, which violated Section 2.3 of the Agreement to not solicit Plaintiff employees during the Restricted Time Period.

### v. Lipscomb Sold Lipscomb Signs' Goodwill to Plaintiff and then Gave the Same Goodwill to Shytle and Shytle Signs

Lipscomb sold the goodwill of Lipscomb Signs to Plaintiff for $940,000.00. Doc. 1-1, pp. 59, 126. While Lipscomb received the money for the goodwill, he never transferred the goodwill to Plaintiff, instead providing the goodwill to Shytle and Shytle Signs. Lipscomb repeatedly referred Plaintiff's potential customers to Shytle and even advised potential customers that Lipscomb was under a noncompete and they needed keep his involvement a secret. App. A, at ¶¶ 23(l), 25(c), 25(j), 29(a), 33, 41, 47, 50-52, 59, 63. Therefore, based on the foregoing facts and evidence in the record, there exists no genuine issue of material fact as to Lipscomb's breach

of the Non-Competition/Goodwill agreement.

Plaintiff was damaged by Lipscomb's breach of the Agreement as it lost its key employees, long-term customers and were wrongfully denied leads to new customers. App. A at ¶¶ 23, 25, 33, 36-38, 45-46, 48, 55-57, 64, 68(c); App. B at ¶ 72. As a result, Plaintiff had to sell all its assets and after the lease ended moved its offices to Charlotte, NC and Anderson, SC. App. B at ¶ 72. Plaintiff tried to sell the entire business through Rich Heaton, but its contract with Mike Wilson, a friend of Lipscomb, fell through and did not close. App. A at ¶ 91; App. B at ¶ 73. Plaintiff's full business potential was never realized due to the money lost when Lipscomb delivered the goodwill Plaintiff purchased for $960,000 to Shytle and Shytle Signs. App. A at ¶¶ 23, 25, 29, 33, 36-38, 45-46, 48, 55-57, 64, 68(c), 73, 95.

### vi. Lipscomb and Shytle Tortiously Interfered with Plaintiff's Prospective Economic Advantage

"An action for tortious interference with prospective economic advantage is based on conduct by the defendants which prevents the plaintiffs from entering into a contract with a third party." *Walker v. Sloan*, 529 S.E.2d 236, 241 (2000). In a tortious interference with prospective economic advantage claim, instead of an existing contract, there must be a contract that the plaintiff would have entered but for the defendant's conduct. *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002). "[A] claim for tortious interference with 'business relations' embraces claims for interference with both existing contracts and prospective future

contracts." *Bloxsom v. Choquette*, 2021 NCBC 57, 43, 2021 NCBC LEXIS 78, *21, 2021 WL 4198507. "'As a general proposition any interference with free exercise of another's trade or occupation, or means of livelihood, by preventing people by force, threats, or intimidation from trading with, working for . . . '" *Mkt. Am., Inc. v. Christman-Orth*, 520 S.E.2d 570, 581 (1999) (quoting *Coleman v. Whisnant*, 35 S.E.2d 647, 656 (1945)).

"To state a claim for tortious interference with prospective business relations, a plaintiff 'must allege facts to show that the defendants acted without justification in 'inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference'" and that the defendants' conduct proximately caused 'measurable damages[.]'" *Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 249 (M.D.N.C. 2016) (quoting *Walker v. Sloan*, 529 S.E.2d 236, 242 (2000)). In a tortious interference with business relations, the plaintiff must have suffered an actual loss of a prospective contractual relationship. *Id*.

In this case, the facts and circumstances discussed above show a tortious interference with prospective business relations of Plaintiff by Defendants, as they worked together to create a competing business and solicit away existing customers and prospective customers. Additionally, Lipscomb's sale of Lipscomb Signs and its goodwill to Plaintiff entitled Plaintiff to utilize the existing commercial

relationships of Lipscomb Signs including its existing key customers, key employees like Shytle, maintaining its ongoing customer relationships, distribution network, and its relationships with the industry players. Plaintiff entered a Non-Competition Agreement with Lipscomb to prevent Lipscomb from engaging in various acts that would curtail the complete benefit of purchasing Lipscomb Signs. See above § I(A)(i)-(iv). However, after the purchase, Lipscomb solicited key employees like Shytle who were employed by Plaintiff to start a competing business. App. A at ¶¶ 13, 14, 17; App B. at ¶¶ 34, With Lipscomb's assistance, Shytle obtained funding, purchased a truck, filed an LLC, and began soliciting customers. App. A at ¶¶ 23-25, 27, 29. Moreover, Lipscomb leased the property adjacent to Plaintiff's business to Shytle to operate the competing business in complete violation of the non-compete agreement with Plaintiff. Id. at ¶ 89; App. B at ¶¶ 60.

In addition, several Lipscomb Signs customers with several years of business relations with Lipscomb Signs, who continued to use Plaintiff for their business needs, left Plaintiff after Shytle started Shytle Sign with the assistance of Lipscomb. These clients included Jim Eckstein (App. A at ¶¶ 23, 36, 68(c); App. B, ¶ 11), Mossburg (App. A at ¶¶ 25, 37; App. B at ¶ 14), SignArt (App. A at ¶¶ 33, 48; App. B at ¶ 18), Carolina Trust Bank (App. A at ¶ 38; App. B at ¶ 21), Crestview Baptist Church (App. A at ¶¶ 33(a), 45; App. B at ¶ 23), Signs By Tomorrow (App. A at ¶ 55; App. B at ¶ 27), SkyVision Signs (App. A at ¶¶ 46, 64; App. B at ¶ 45),

Rutherford Management (App. A at ¶ 57; App. B at ¶ 50), Ted A. Greve & Associates (App. B at ¶ 56), Henderson Oil Company (App. A at ¶¶ 33, 46(d); App. B at ¶ 70), and EnMark Stations (App. A at ¶ 33; App. B at ¶ 71). When these customers left Plaintiff to take Shytle Sign services, it caused severe damage to Plaintiff.

Like Lipscomb, Shytle is equally responsible for the tortious interference. Being the key employee of Lipscomb Signs, he was aware of the relationship between Plaintiff and Lipscomb and Lipscomb's sale of goodwill and Shytle knew about the Agreement. After being aware of these facts, Shytle accepted the help and assistance from Lipscomb in starting Shytle Sign. The text exchanges between Shytle and Lipscomb show Shytle's consultations with Lipscomb to start and establish Shytle Signs. See above § I(A)(iii); App. A at ¶¶ 23, 24, 25, 26, 30, 42.

Shytle and Shytle Signs also received financial help from Lipscomb to purchase trucks, equipment, and materials. See above § I(A)(iii). In essence, Shytle assisted Lipscomb to form a new business for Lipscomb with the same customers and goodwill that Lipscomb Signs held then paid Lipscomb monthly for his investment. Shytle and Shytle Sign used Lipscomb Signs' goodwill to bring back its customers who had started to do business with Plaintiff. See above § I(A)(v). Thus, the Defendants' acts resulted in losing several existing and prospective customers of Plaintiff, which adversely affected its business and prospective economic advantage.

Defendants took advantage of the sale of Lipscomb's goodwill and business to Plaintiff by taking back the same in violation of the contracts between them. Therefore, the aforesaid facts and circumstances establish that there exists no genuine issue of material fact as to Plaintiff's claim of tortious interference with prospective economic advantage and that Plaintiff suffered damages.

### vii. Lipscomb Tortiously Interfered with Plaintiff's Business Relations

To succeed on a cause of action for Interference with Business Relations, plaintiff must show: "(1) That a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) that the outsider had knowledge of the plaintiff's contract with the third person; (3) that the outsider intentionally induced the third person not to perform his contract with the plaintiff; (4) that in so doing the outsider acted without justification; (5) that the outsider's act caused the plaintiff actual damages." *Lexington Homes, Inc. v. W.E. Tyson Builders, Inc.*, 331 S.E.2d 318, 321 (1995) citing *Childress v. Abeles*, 84 S.E.2d 176 (1954). However, a plaintiff does not need to prove a defendant caused the breach in a client contract, only that defendant wrongfully interfered with the plaintiff's rights under the contract. *Lexington* at 332.

Apart from Lipscomb's tortious interference with Plaintiff's prospective economic advantage, he also interfered with Plaintiff's business relations.

As noted above, Lipscomb actively assisted Shytle in setting up Shytle Signs

that directly competed with Plaintiff. App. A at ¶¶ 23-26, 29-30, 35, 42. Shytle Signs then directly interfered with Plaintiff's contracted customers. On December 10, 2020, Diane Ledbetter ("Ledbetter") requested a quote from Plaintiff, which resulted in a down payment on December 12, 2020. Id. at ¶¶ 93, 94. Between December and February, Lipscomb interfered with this contract, on February 2, 2021, he texted the following to Shytle, "I am going to send you correspondence with Diane Ledbetter, and I plan to supply her signage. I even have the $6900 Davie contract." Id. at ¶ 100. This communication shows Lipscomb and Shytle were aware of the contract between Ledbetter and Plaintiff but interfered to obtain the contract. On February 5, 2021, Ledbetter received a refund check she requested from Plaintiff and emailed Lipscomb and Shytle to ask them to design the sign she had previously ordered with Plaintiff. Id. at ¶ 101. Additionally, Mossburg Signs was Plaintiff's customer who Lipscomb directly referred to Shytle while informing Mossburg of Lipscomb's noncompete. Id. at ¶ 25(j); App B at ¶ 14. Shytle confirmed on March 15, 2019, that he went to the Spartanburg Airport to work a job for Mossburg. App. A at ¶ 37. Lipscomb and Shytle directly interfered with Plaintiff's customer contracts, thereby causing harm to Plaintiff through the loss of customers and are therefore liable for Interference with Business Relations.

### B. Lipscomb engaged in Unfair and Deceptive Trade Practices Pursuant to N.C.G.S. §75-1.1, and Lipscomb and Shytle conspired to violate the Non-Competition Agreement, and use the goodwill sold to Plaintiff.

"Chapter 75 of the North Carolina General Statutes prohibits unfair and deceptive acts which undermine ethical standards and good faith dealings between parties engaged in business transactions." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 63 (1998). "[A] trade practice is deceptive if it 'possesses the tendency or capacity to mislead, or creates the likelihood of deception.'" *Id.* (quoting *Forsyth Memorial Hospital v. Contreras*, 421 S.E.2d 167, 170 (1992), *disc. review denied*, 426 S.E.2d 705 (1993)).

Section 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" N.C.G.S. § 75-1.1(a). For an Unfair and Deceptive Trade Practices claim, Plaintiff must show that "(1) defendant committed an unfair and deceptive act or practice, (2) the act in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has tendency to deceive." *Id.* "Once the plaintiff has presented evidence in support of each of these elements, the question whether defendants committed the alleged acts is a question [of fact] for the jury; the court must then determine as a matter of law whether the proven facts constitute an unfair or deceptive trade practice." *First Atl.*

*Mgmt. Corp.*, 507 S.E.2d at 63. (internal quotation and citation omitted).

A plaintiff has a claim for civil conspiracy when "there is an underlying claim for unlawful conduct." *Sellers v. Morton*, 661 S.E.2d 915 (2008). To establish civil conspiracy, a plaintiff first offers "proof of an agreement between two or more persons." *Sellers*, 661 S.E.2d at 922. Second, the plaintiff "must present evidence of an 'overt act' committed by at least one conspirator in furtherance of the 'common objective.'" *Holt v. Williamson*, 481 S.E.2d 307 (1997). Third, the plaintiff must prove that the commission of the overt act was in furtherance of the conspiracy resulting in damages to the plaintiff. *Id*. at 317. "[A]ll of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement." *Neugent v. Beroth Oil Co.*, 560 S.E.2d 829 (2002). See also *Slattery v. Appycity, LLC*, 2021 NCBC LEXIS 24, 2021 NCBC 17, 2021 WL 1124059.

Multiple acts by Lipscomb constitute unfair and deceptive practices under N.C.G.S. §75-1.1. Under the Purchase Agreement, Lipscomb sold both the material assets and goodwill associated with Lipscomb Signs. As discussed above, Lipscomb repeatedly gave the goodwill he sold to Plaintiff to Shytle and Shytle Signs by directing customers away from Plaintiff and to Shytle (see above § I(A)(vi)), acting as a guarantor and consultant for Plaintiff's competitor Shytle Signs (see above § I(A)(iii)), and acting deceptively by continuing to use an email account he sold to Plaintiff (see above § I(A)(i) and (v)). All of these actions patently violate

N.C.G.S.§75-1.1, et. seq., to §75-16.2.

Therefore, the evidence on record sufficiently affirms the absence of a genuine issue of material fact on Plaintiff's claim against Lipscomb for Unfair and Deceptive Trade Practices under N.C.G.S. §75-1.1.

On the count of civil conspiracy, the evidence shows that the Defendants formed an agreement and engaged in acts to violate multiple provisions of the Agreement, despite both Lipscomb and Shytle's clear knowledge of the existence and application of the Agreement. App. A at ¶¶ 23(n) and (t), 25(j), 29(a), 73(c). As Lipscomb was bound by the Agreement, an agreement and actions to violate it constitute unlawful conduct, with the results of the conspiracy leading directly to the closure of Lipscomb Signs.

Lipscomb conspired with Shytle, an employee of Plaintiff, to form a business to compete with Plaintiff. Id. at ¶¶ 20, 22, 23, 25. Lipscomb assisted Shytle in multiple ways to establish Shytle Sign and joined Shytle in operating the competing business. Id. at ¶¶ 26, 27, 49, 50. Meanwhile, Shytle accepted all the help from Lipscomb to form Shytle Sign (Id. at ¶¶ 29, 32, 33, 66) while knowing that Lipscomb was acting against his obligations to Plaintiff (Id. at ¶¶ 23, 29). After establishing Shytle Sign, Shytle directly competed with Plaintiff for business (Id. at ¶¶ 26, 38, 49) while Lipscomb solicited Plaintiff' employees and customers (Id. at ¶¶ 53, 56, 58, 81). Lipscomb and Shytle repeatedly acted in concert to violate the non-compete,

with the result of these actions undermining Plaintiff's business to the point of closure.

Therefore, the evidence found in the record before the Court indisputably establishes these facts and affirm that there are no disputed factual matters as to the civil conspiracy claim against Defendants.

### C. Conversion Against All Defendants

"Under North Carolina law, 'the tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Hamby v. Thurman Timber Co., LLC*, 818 S.E.2d 318, 322 (2018) (quoting *Variety Wholesalers, Inc., v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (2012)). "'Two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant.'" *Id*. (quoting *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 665 S.E.2d 478, 489 (2008)). See also *Estate of Redden v. Redden*, 632 S.E.2d 794, 798 (2006); *Steele v. Bowden*, 768 S.E.2d 47, 55 (2014). Moreover, summary judgment is appropriate where the statute of limitations is properly pled, and the facts are not in conflict. *Rowell v. N.C. Equip. Co.*, 552 S.E.2d 274, 276 (2001).

Under the Purchase Agreement Schedule 1.1, Plaintiff is the lawful owner of "all nonpersonal items in shop and fabrication departments." Doc. 1-1, pp.105-108.

The digital display in the property of Plaintiff's business is worth $30,521.00. Ex. E, p. 60, ¶¶ 14-18. Lipscomb planned, as early as March 17, 2019, to remove the digital sign from Plaintiff's property. App. A, at ¶ 39. On April 1, 2019. Defendants directed the employees of Plaintiff to move the digital display to Shytle Sign's premises owned by Lipscomb. Ex. E, p. 58 ¶ 23 – p. 60 ¶ 25.

Under Schedule 1.1, Plaintiff was the authorized owner of the digital display. Evidence shows that Plaintiff was in possession of the display before April 1, 2019, and that the sign was taken from Plaintiff's facilities at the direction of Lipscomb on April 1, 2019. By moving the digital display from Plaintiff's property, Defendants deprived Plaintiff of its right of ownership and possession of digital display. Defendants' conduct is sufficient to establish Plaintiff's conversion claim against them. Therefore, based on Schedule 1.1 FFE the facts are clear regarding the ownership of digital display. The evidence also proves that Defendants moved the digital display from Plaintiff's property to Lipscomb's property. Thus, there exists no genuine issue of material fact in Plaintiff's claim against Defendants for wrongful conversion.

### D. Lipscomb's Counterclaim Against Plaintiff for Conversion

Lipscomb's counterclaim for conversion against Plaintiff raises no issue of material fact for trial. Purchase Agreement Schedule 3.1 of the contract listed the inventory to be transferred to Plaintiff. Doc. 1-1, pp. 128-134. According to

Lipscomb, these items were marked with orange paint and stored in the gravel lot located between the building leased to Plaintiff and another building owned by Lipscomb. Doc. 9, ¶¶ 10-12. Lipscomb claims that Plaintiff knowingly removed materials and personal property located in the gravel lot that were not identified as inventory. Id.

In 2021, the Court denied a pre-discovery Motion to Dismiss Lipscomb's counterclaim, since the then-existing record lacked the "level of specificity" necessary to decide the motion. Doc. 17, pp.13-14; Doc. 18, p. 2. Since the denial, Lipscomb has done nothing to further his counterclaim. No evidence has been submitted that establishes the elements necessary for a reasonable factfinder to decide in favor of the counterclaim plaintiff. Lipscomb has failed to identify any specific property that Plaintiff allegedly took, nor has Lipscomb provided any time frame for when Plaintiff allegedly committed said act. Lipscomb's counterclaim merely stated the formulaic elements of the conversion cause of action, and no new facts to support his claim have been revealed.

To conclude, following discovery, Lipscomb's allegations have no evidentiary support. Therefore, Plaintiff is entitled to summary judgment in its favor on the conversion claim.

## **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that this Court grant its Motion for Summary Judgment on all its causes of action against Defendants GERALD LIPSCOMB, GARY DEAN SHYTLE, and SHYTLE SIGN AND LIGHTING SERVICES, LLC and against Defendant GERALD LIPSCOMB'S counterclaim for conversion.

**This is the 14th day of November 2022.**

**SEIFERFLATOW, PLLC**

/s/Mathew E. Flatow
Mathew E. Flatow
N.C. Bar No. 35282
mathew@seiferflatow.com

/s/Brandon T. Forbes
Brandon T. Forbes
N.C. Bar No. 50109
brandon@seiferflatow.com

SeiferFlatow, PLLC
2319 Crescent A venue
Charlotte, NC 28207
P: (704) 512-0606
F: (704) 314-0677
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was electronically filed on November 14, 2022, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties indicated on the electronic filing receipt. The parties served are as follows:

> W. Scott Jones
> Stephen L. Cash
> Barbour, Searson, Jones & Cash, PLLC
> 21 Battery Park Avenue, Suite 201
> Asheville, NC 28801
> scott@lawyersasheville.com
> steve@lawyersasheville.com
> ***Attorneys for Defendants***

**This is the 14th day of November 2022.**

> /s/ Mathew E. Flatow
> MATHEW E. FLATOW